IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 3, 2026

## TERESA SUMPTER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. C1902662    Carlyn L. Addison, Judge**

———————————————

### No. W2025-00539-CCA-R3-PC

———————————————

The Petitioner, Teresa Sumpter, appeals from the Shelby County Criminal Court's denial of post-conviction relief from the Petitioner's convictions for felony theft and money laundering and her effective sixty-year sentence. On appeal, the Petitioner contends that the post-conviction court erred by denying relief on her ineffective assistance of counsel claims. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and KYLE A. HIXSON, JJ., joined.

Gerald S. Green (on appeal) and Kelly Pearson (at evidentiary hearing), Memphis, Tennessee, for the appellant, Teresa Sumpter.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Daniel Buchanan, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Petitioner's convictions relate to her conduct during her two-year employment as an administrative assistant to attorney Jerry Schatz, the victim. The Petitioner was indicted for theft of property valued at more than $250,000 and money laundering. The trial evidence showed that the victim hired the Petitioner in July 2013 as an administrative assistant with an agreed-upon salary of $30,000. The victim contacted two of the Petitioner's references during the hiring process. Although the victim did not recall asking the Petitioner about her previous criminal history, the Petitioner "did not indicate that she had been previously convicted of any crimes." After the victim discovered the crimes in this case, he learned that the Petitioner had two previous felony convictions for theft.

During her employment, the Petitioner managed the business operating financial account, the business credit card, and the trust account. Upon reviewing a statement related to a money market account, the victim learned that the balance was approximately $600 when the balance should have been $150,000. Afterward, the victim and a bank representative reviewed the victim's personal account, business operating account, and trust account. The personal account statement revealed nothing unusual, but the victim was "horrified" when he reviewed the business operating and trust accounts. The victim explained that he maintained between $6,000 and $10,000 in the operating account but that the statement showed a balance of "a few hundred dollars." The trust account had a balance of seventy cents. The statements reflected that checks had been written in large amounts and that deposits had been made to the trust account from the money market account, which the victim did not authorize. The business operating account showed the checks were made payable to the Petitioner, which the victim did not sign. The victim had the locks changed at his office upon learning the "size of this."

The victim testified that the Petitioner drafted fraudulent checks on his business operating and trust accounts, made unauthorized charges on the victim's credit card and PayPal accounts, opened various credit cards in the victim's name, and altered bank statements to avoid detection. Extensive documentation was received as trial exhibits, including documents prepared by the victim and the victim's bank reflecting that the Petitioner took funds totaling $373,412.77. Some of the documentation was provided to the victim from the Petitioner's former husband, Jeffrey Savarin, who found a satchel of financial documents inside the Petitioner's home. Mr. Savarin identified one document from the satchel "as being very odd" because the document reflected the victim's name and had "white out on it . . . there's been strips of paper cut detailed, put on this page, taped."

The proof showed that the Petitioner made fraudulent credit card and PayPal purchases at Wolfchase Honda, Pier One, Game Stop, various restaurants, Progressive Insurance, Southwest Airlines, StubHub, Ticket City, Tiffany, and Stromberg Time. The Petitioner purchased four vehicles using fraudulent checks from the victim's trust account.

After the proof, the jury found the Petitioner guilty of theft of property valued at more than $250,000 and money laundering. The Petitioner, however, did not return to the courtroom for the reading of the verdicts, and the trial court revoked her pretrial bond. *State v. Teresa Sumpter*, No. W2021-00119-CCA-R3-CD, 2022 WL 946570, at *1-10 (Tenn. Crim. App. Mar. 30, 2022) (footnotes omitted), *perm. app. denied* (Tenn. July 14, 2022).

On January 24, 2023, the Petitioner filed a pro se petition for post-conviction relief, alleging multiple ineffective assistance of counsel claims. After the appointment of counsel, an amended petition for post-conviction relief was filed on April 18, 2024. In the

petition, the Petitioner alleged that counsel provided ineffective assistance by (1) failing to present witnesses to testify about the nature of her and the victim's relationship, (2) failing to object to the chain of custody and authenticity of the "satchel of documents," (3) failing to cross-examine witnesses to "explore" inconsistencies in the testimony, and (4) failing to appeal the disproportionality of her sixty-year sentence.

At the February 28, 2025 evidentiary hearing, the Petitioner testified that she wanted trial counsel to present Patricia Boyden as a witness and that Dr. Boyden's affidavit was attached to her petition for relief. The Petitioner said that Dr. Boyden and the victim had spoken on the telephone but had never met. The Petitioner said that she and counsel discussed presenting Dr. Boyden as a trial witness, that counsel and Dr. Boyden spoke by telephone but that, ultimately, Dr. Boyden was unavailable for trial due to hip replacement surgery.

The Petitioner testified that she wanted trial counsel to present Kim Osborne, the Petitioner's longtime friend. The Petitioner stated that at an unspecified time, Ms. Osborne was present for a telephone call between the Petitioner and the victim. The Petitioner stated that at the time of the call, she was vacationing in Georgia where Ms. Osborne lived and that the Petitioner and the victim discussed work-related issues and personal matters. The Petitioner said that the conversation "escalated," that the victim yelled at her, and that she told the victim "to back off" because "everything that was happening had been agreed to prior to the departure of the vacation." The Petitioner stated the victim testified that he did not know that she went on vacation and that he provided money for the vacation. The Petitioner stated that the victim's testimony was untrue and that Ms. Osborne heard the victim say "that's my money." The Petitioner believed Ms. Osborne's testimony would have "poke[d] holes" in the prosecution's case because the victim testified he did not know he had provided the money for the vacation. The Petitioner stated that although counsel and Ms. Osborne spoke by telephone, counsel did not present Ms. Osborne as a trial witness.

The Petitioner testified that her defense was that although money "changed hands," she did not steal from the victim. She said that she and trial counsel, who represented her for two years in this case, met five or six times before the trial. She said that the length of their meetings varied but noted that counsel worked with a team of other attorneys who worked on this case. She did not know if counsel hired an accountant but recalled that there were "some issues" with her cell phone, which she stated had been "tampered with . . . by my children and others" while she was in custody. She recalled that "he took the phone and tried to retrieve messages between . . . [the victim] and myself over the cell phone that would have been good evidence." She knew counsel investigated the case.

The Petitioner testified that the satchel of documents referred to at the trial did not come from her home. She said that she and trial counsel discussed the documents and that she only knew about one document, which was a "doctored up" credit card statement, before the trial. She recalled discussing this document with counsel but said she did not review all of the discovery materials. She did not know about the other documents from the satchel. She said that she believed she owned the satchel, that it had been empty, and that it had been "filled at some point." She said that she recognized some of the documents from the satchel as being personal records and belongings. She said the police searched her home before the satchel was found at her home. She recalled that the trial evidence showed that while she was in custody, Mr. Savarin found the satchel of documents in her kitchen and provided the satchel and documents to the victim, who provided it to the prosecutor. She denied that the satchel was in her home. She did not recall counsel's objecting to the admission of the documents based upon a chain of custody issue or a lack of authentication.

The Petitioner acknowledged that numerous documents were received as trial exhibits and testified that she only reviewed some of them before the trial. She recalled that trial counsel said a portion of the discovery documents were duplicative. She stated that if she had reviewed all of the documents with counsel, she would "most likely" have had "some evidence to refute some of that." Referring to her trial testimony, she agreed that she received the money and stated "that wouldn't have been proof, but statements that were made that could have been disproven by a document, like, an outside document, like, the whole I was escorted out by the police thing, you know what I mean, that could have been easily proven."

The Petitioner testified that trial counsel did not cross-examine the victim adequately because "some evidence" would have shown the victim testified untruthfully and that counsel did not present this evidence. She said that during the trial, she felt "like we can tangibly prove that's not correct" with regard to an unspecified portion of the victim's testimony and that she was told "that's not important . . . let's wait."

The Petitioner testified that, generally, trial counsel did not "drill down on inaccurate statements made by witnesses." She did not think counsel discussed the case with her sufficiently to be able to cross-examine the witnesses to highlight any inconsistent statements.

The Petitioner testified that her sixty-year sentence was not proportionate to the conviction offenses and that she and trial counsel discussed challenging the length of her sentence on appeal. She said that co-counsel worked on the motion for a new trial and the appeal, that co-counsel did not raise a sentencing issue in the motion for a new trial, and that co-counsel said "we're doing it later or we're going to pursue it in – something. There's a . . . strategy or something." She said that she and co-counsel did not discuss what

-4-

issues co-counsel would raise on appeal and that "they just sent it to me." She said she "received copies of what happened, and I never saw anything about the sentencing in that stuff."

On cross-examination, the Petitioner testified that she knew Dr. Boyden would be unavailable for trial due to a surgery that had been postponed several times and that she was prepared to move forward with the trial without Dr. Boyden. The Petitioner said that she suggested obtaining an affidavit from Dr. Boyden because a portion of the prosecution's witnesses testified by affidavit but that an affidavit was not obtained from Dr. Boyden.

The Petitioner testified that her husband at the time of her arrest died while she was in custody and that after his death, she contacted her former husband because the children could not live alone at the home. She said that her former husband, who testified at the trial, agreed to "remove the children's stuff" and that she suggested dispersing and storing "this stuff" because she did not know when she would be released from custody. She agreed that she gave her former husband permission to enter the home.

When asked what evidence she possessed showing that the victim made false statements during his trial testimony regarding the charged offenses, she testified

> Probably not. Probably not. I -- I do -- I -- I don't want to just shut it down and say no, but I know that it was more -- it was extremely misleading. I mean, I -- I -- for him to say that he never goes to his own bank and all -- I mean, all that kind of stuff, he never checked the records. That's related to what I was directly charged with.
>
> . . . .
>
> We -- I could have [had evidence] at that time. I could have, because there were witnesses there that know that man goes to that bank three, four times a week.

The Petitioner stated that the bookkeeper at the victim's office, who testified by affidavit, and a woman, whom the Petitioner did not identify and who did not testify, could have testified that the victim reviewed his bank statements and went to the bank frequently.

Initially, the Petitioner testified that evidence existed showing that her former husband's trial testimony was untrue but that she did not "know how now going back in time I would -- I've never considered that prospect, like, how would I have proven, you know, what he said was untrue."

The Petitioner acknowledged that her effective sentence was within the sentencing "guidelines."

On redirect examination, the Petitioner testified that she told trial counsel to obtain the police report regarding her arrest and removal from the office building. She said she told counsel to obtain the victim's calendars. She explained that the victim noted on the calendar his every "move throughout the day," including when he went to the bank, reviewed the trust account, and reviewed the checkbook and that afterward, the victim marked the calendar with his initials. She said that counsel explained that the defense could not obtain the victim's calendars through the discovery process.

Jeffery Savarin, the Petitioner's former husband, testified that he spoke with trial counsel a few times "after the case." Mr. Savarin did not recall the substance of those discussions but said that he discussed the satchel of documents with either counsel or the victim. Mr. Savarin stated he talked to the victim before the trial. Mr. Savarin stated that after he found the satchel of documents inside the Petitioner's home, he spoke with the victim and that, based upon this conversation, he took the satchel to the victim the next day. When asked why he did not take the satchel to the police or to the prosecutors, Mr. Savarin stated that going to the police was not in his or his children's best interests based upon his conversation with the victim. Mr. Savarin stated that the victim threatened him, that the victim needed information, and that the victim said that Mr. Savarin "was going to play ball or else." He said that he and his children would have been "pulled into this mess" and "would suffer," along with the Petitioner. He did not know the date he found the satchel inside the home or how long the victim possessed the documents inside the satchel before providing them to the prosecutor.

Mr. Savarin testified that he reviewed a portion of the documents inside the satchel and that he authenticated the documents he had reviewed at the trial. He said that in addition to feeling pressured by the victim, he felt pressured by the prosecutor, who said Mr. Savarin could be compelled to testify if Mr. Savarin did not cooperate voluntarily. He said he cooperated.

On cross-examination, Mr. Savarin testified that he had not been pressured or promised anything in exchange for his testimony at the evidentiary hearing. Mr. Savarin said that the documents inside the satchel reflected the victim's name and that he was asked at the trial about a "doctored up" credit card statement. He said that he was "foggy" due to the passage of time but that he recalled reviewing a credit card statement with a "signature that made [him] question what was what." He stated that the documents presented to him at the trial looked to be the same documents he saw inside the satchel at the Petitioner's home. When asked if the documents he reviewed at the trial contained the same information that he had seen when he removed the documents from the satchel, Mr. Savain said, "At a basic glance, I could say yes."

-6-

Upon questioning by the post-conviction court, Mr. Savarin testified that he spoke to the victim before finding the satchel inside the Petitioner's home and that the victim stated that Mr. Savarin was "involved" regardless of whether Mr. Savarin wanted to be involved. When the court asked him to define "involved," Mr. Savarin stated, "The attack, that's – I'm paraphrasing, on [the Petitioner] . . . . The case . . . that he was building against her." He said that his first thought upon seeing the satchel was that it would help the victim. Regarding the documents inside the satchel, Mr. Savarin stated that he personally saw the documents inside the Petitioner's home and that the satchel was on the kitchen table.

Trial counsel testified that he and co-counsel represented the Petitioner and that he had practiced law for twenty-five years and had participated in hundreds of trials and appeals. Counsel said that co-counsel worked on the Petitioner's appeal but that his firm worked as a team.

Trial counsel testified that he had spoken with Kim Osborne by telephone several times and that they discussed her potential trial testimony. Counsel said that he did not present Ms. Osborne as a witness because she did not possess much favorable information to the defense. Counsel said that Ms. Osborne overheard a telephone conversation during which the victim stated that "you should do something, because I'm paying for all of this or I'm paying." Counsel said that the Petitioner wanted to show that the victim knew the Petitioner spent the victim's money and that the victim voluntarily gave the money to the Petitioner. Counsel said he made a strategic decision not to present Ms. Osborne as a defense witness because counsel feared her testimony could have been used to show that the Petitioner lied about where the money originated or that the Petitioner did not have permission to have the money. Counsel said, "We were trying to go a different route . . . than that."

Trial counsel testified that he did not recall speaking with Dr. Boyden but acknowledged that in her affidavit attached to the petition for relief she stated she spoke with counsel. Counsel said, though, that he had a slight memory of a potential witness who needed surgery and could not attend the trial. Counsel said that there were problems getting her to the trial but that counsel concluded that her testimony was neither necessary nor critical to the defense.

Trial counsel testified that a portion of the documents found inside the satchel were received as trial exhibits and that he did not object to the admission of those documents. Counsel stated that the prosecutor in this case provided him with one disc of all of the discovery materials and with one disc of the evidence the prosecutor wanted to introduce at the trial. Counsel said that his and the prosecutor's working relationship allowed them to review the documents, argue about any admissibility issues, and resolve any issues before the trial. Counsel recalled objecting and requesting a bench conference when a witness began to possibly "veer off" into prior bad act evidence, that the prosecutor agreed

that the witness was "heading in the wrong direction," and that counsel told the prosecutor to ask leading questions to avoid prior bad act evidence.

Trial counsel testified that he reviewed the documents found inside the satchel, discussed the documents with the prosecutor, and determined that the documents the prosecutor wanted to introduce were admissible. Counsel stated that the police were not involved in Mr. Savarin's discovery of the satchel, that the Fourth Amendment did not provide an avenue for exclusion, and that a chain of custody issue did not exist. Counsel said that when he and the Petitioner reviewed the documents, she did not object to their authenticity or allege that they had been altered.

Trial counsel testified that he was unaware of any evidence that he could have presented to question the truthfulness of the witnesses' trial testimony. Counsel acknowledged that he was present for the Petitioner's evidentiary hearing testimony and stated that he did not recall the Petitioner's specifying what he failed to ask during cross-examination of the witnesses. Counsel recalled that he cross-examined the victim about the victim's participating in auditing the trust account and said that the evidence showed the victim's office was a poorly managed law office and that counsel had engaged in multiple ethical violations by delegating control and oversight of the trust account.

Trial counsel testified that his memory of the sentencing hearing was limited due to the passage of time but recalled that the trial judge was angry and used "harsh" language. Counsel recalled that the judge stated the Petitioner was "a flat out thief and a liar." Counsel said that the theft conviction was a Class A felony and that money laundering conviction was a Class B felony. Counsel said that he most likely argued that any sentence on the higher end of the sentencing ranges was more akin to violent crime and was not appropriate for property crimes. Counsel said, though, that this case was not the first time the Petitioner had been convicted of stealing from an attorney, which "didn't help."

Trial counsel testified that he thought co-counsel was appointed to work on the Petitioner's appeal and signed the appellate brief, although trial counsel would have assisted because his office worked as a team. Counsel said he would have assisted with issue spotting and decision making. When asked why the length of the sentence was not challenged on appeal, counsel referred to *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). Counsel said that although the sentence was long, the trial court acted within its discretion and that counsel concluded the sentence was reasonable and would not warrant appellate relief.

Trial counsel testified that the defense theory was that the Petitioner and the victim were involved in a romantic relationship and that the victim gave the money to the Petitioner because of the sexual relationship or because the victim was attempting to avoid payroll taxes by "wildly underpaying" the Petitioner. Counsel stated that the Petitioner's

proposed trial witnesses did not bolster the chosen defense theory and that one of the witnesses heard one telephone call of the victim yelling at the Petitioner because he was a horrible supervisor. Counsel said that the substance of the conversation was merely that the victim said he paid for the Petitioner's vacation, which he did by paying the Petitioner as salary. Counsel concluded that the potential testimony did not have "the impact" the Petitioner thought.

Referring to the affidavit of Dr. Boyden attached to the petition for relief, trial counsel testified that the affidavit stated she had personal knowledge that the victim knew the Petitioner had previous convictions when the victim hired the Petitioner. Counsel said, though, that without her testifying at the evidentiary hearing, he would never know what her trial testimony would have been.

Trial counsel testified that the chain of custody regarding the documents in the satchel was "complete." Counsel said that Mr. Savarin found the documents and gave them to the victim, the victim gave the documents to the prosecutor, and the prosecutor gave the documents to counsel during discovery. Counsel said that he did not ask the victim if he altered any of the documents but that he asked the Petitioner when they reviewed the documents if any documents had been added or if she saw a document she did not recognize. Counsel said they reviewed all of the documents after her release from confinement. Counsel recalled that discovery was voluminous and that it took days to review every bank statement.

Trial counsel testified that the best evidence supporting the defense theory was the Petitioner's anticipated trial testimony that she and the victim were in a romantic relationship and that the money was a gift for romantic favors and for payment in lieu of a salary to avoid payroll taxes. Counsel said that he and the Petitioner discussed her anticipated testimony for "years" and noted that he represented the Petitioner in a civil lawsuit involving the victim. Counsel said, though, that during her trial testimony, the Petitioner "got up there and absolutely refused to testify to that." Counsel said, "It was the worst thing I've ever seen." Counsel recalled that the prosecutor looked at him and said, "Well, that's not what I expected."

Trial counsel testified that he had no knowledge of any potential witness who would testify that the victim knew about the Petitioner's previous theft convictions. Counsel acknowledged Dr. Boyden's affidavit, in which she stated that, during a telephone call with the victim for a reference before hiring the Petitioner, the victim inquired about the Petitioner's previous convictions, that she advised the victim that the matters had been resolved, and that the victim had taken responsibility for her actions. Counsel stated that he first learned of Dr. Boyden's statements when he reviewed the petition for relief. Counsel said he was not told that the victim told Dr. Boyden that the victim knew about the Petitioner's previous theft convictions, which counsel said involved the Petitioner's

stealing from another attorney. Counsel said that he would have presented Dr. Boyden as a trial witness to impeach the victim's testimony if he had known the information. Counsel stated, though, that when he spoke with Dr. Boyden, she did not tell him the victim knew about the Petitioner's convictions. Counsel said that the victim's negligence in hiring the Petitioner was critical to the defense.

Trial counsel testified that the Petitioner's flight and absconding for approximately one year before she could be sentenced "didn't do herself any favors." Counsel believed that the Petitioner would have received the same sentence even if she had not fled but said that the flight did not help. Counsel said that if the Petitioner had apologized and testified at the sentencing that she was a kleptomaniac and could not help herself, the trial court might have imposed a shorter sentence. Counsel stated that raising sufficiency of the evidence on appeal was the better issue to raise because sentencing would not warrant appellate relief.

Upon this evidence, the post-conviction court denied relief at the evidentiary hearing after determining that the Petitioner failed to establish by clear and convincing evidence her ineffective assistance of counsel allegations. On May 20, 2025, the court entered a written order denying relief. This appeal followed.

The Petitioner contends that the post-conviction court erred by denying relief on her ineffective assistance of counsel claims.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2025). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2025). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

-10-

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

## A.     Failure to Present Dr. Boyden and Ms. Osborne as Trial Witnesses

The Petitioner argues that trial counsel provided ineffective assistance by failing to present Dr. Boyden and Ms. Osborne at the trial. The Petitioner asserts that the substance of Dr. Boyden's and Ms. Osborne's affidavits attached to the petition for relief show that counsel should have presented them as trial witnesses. The State responds that the post-conviction court did not err because the Petitioner failed to present the potential witnesses at the evidentiary hearing, counsel made a reasonable strategic decision not to present Ms. Osborne as a witness, and Dr. Boyden was unavailable to testify.

At the evidentiary hearing, the post-conviction court credited trial counsel's testimony that, after his discussions with Ms. Osborne, he determined that her proposed testimony would not have benefited the defense. The court found that Ms. Osborne may or may not have overheard "a conversation or pieces of it" between the Petitioner and the victim. Relative to Dr. Boyden, the court found that the Petitioner testified that Dr. Boyden was unavailable for the trial. The court found that the Petitioner failed to present the potential witnesses at the evidentiary hearing and concluded that the Petitioner failed to establish her ineffective assistance claim by clear and convincing evidence.

In the written order denying relief, the post-conviction court found that the Petitioner testified that Ms. Osborne had been en route to the trial when trial counsel advised her that her testimony was not required. The court found that the Petitioner

believed Ms. Osborne's potential testimony would have been that Ms. Osborne overheard a conversation between the victim and the Petitioner that "escalated from a professional to a personal nature," which showed the victim knew the Petitioner spent the victim's money on a vacation. The court found that trial counsel spoke with Ms. Osborne and that he determined she did not possess information favorable to the defense. The court found relative to Dr. Boyden that the Petitioner admitted during her testimony that Dr. Boyden was unavailable for the trial and that the Petitioner failed to show Dr. Boyden's potential testimony would have benefited the defense. The court determined that counsel made a strategic decision not to present these potential witnesses. The court did not address the Petitioner's failure to present Dr. Boyden and Ms. Osborne as witnesses at the evidentiary hearing in the written order.

### 1.      Ms. Osborne

The record reflects, based upon trial counsel's credited testimony, that counsel and Ms. Osborne spoke by telephone several times and that Ms. Osborne told counsel that she overheard a conversation between the Petitioner and the victim, who said that the Petitioner "should do something, because I'm paying for all of this or I'm paying." Although counsel wanted to present evidence that the victim knew the Petitioner spent the victim's money on a vacation and voluntarily gave money to the Petitioner, counsel decided not present Ms. Osborne as a witness because counsel feared her testimony could have been used to show that the Petitioner lied about where the money originated or that the Petitioner did not have permission to have the money. Counsel determined that the substance of the conversation was merely that the victim paid for the Petitioner's vacation by way of the victim's being the Petitioner's employer. The post-conviction court found that counsel made a reasonable strategic decision. *See Adkins*, 911 S.W.2d at 347; *see also Pylant*, 263 S.W.3d at 874. As a result, the record does not preponderate against the post-conviction court's determination that the Petitioner failed to establish that counsel provided deficient performance.

Furthermore, the Petitioner failed to present Ms. Osborne as a witness at the evidentiary hearing. The post-conviction court and appellate courts will not speculate about the nature of any evidence which was not presented at the hearing. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We note that although Ms. Osborne's affidavit was attached to the petition for relief, it was insufficient to establish the Petitioner's ineffective assistance claim and was not received as an exhibit at the evidentiary hearing. Relative to an ineffective assistance claim that counsel failed to present a witness at the trial, a petitioner "should present that witness at the post-conviction hearing. 'As a general rule, this is the only way the petitioner can establish that . . . the failure to . . . call the witness . . . resulted in the denial of critical evidence'" to the prejudice of the defense. *Pylant*, 263 S.W.3d at 869 (quoting *Black*, 794 S.W.2d at 757). As a result, the record does not preponderate against the post-conviction court's determination that the

Petitioner failed to establish that counsel provided deficient performance resulting in prejudice. The Petitioner is not entitled to relief on this basis.

## 2. Dr. Boyden

The record reflects that the Petitioner wanted trial counsel to present Dr. Boyden as a witness to show that the victim knew about the Petitioner's previous theft convictions. Trial counsel's credited testimony reflects that he did not recall speaking with Dr. Boyden but that he had a slight memory of a potential witness who needed surgery and could not attend the trial. The Petitioner admitted that Dr. Boyden could not attend the trial due to surgery. Counsel had no knowledge of any potential witness who would have testified that the victim knew about the Petitioner's previous theft convictions, and he first learned of Dr. Boyden's statements that she and the victim discussed the Petitioner's previous theft convictions when he reviewed the petition for relief. Counsel's credited testimony reflects Dr. Boyden did not tell counsel that the victim knew about the Petitioner's previous convictions, and counsel determined that the information Dr. Boyden provided to counsel was not critical to the defense. Furthermore, the Petitioner did not present Dr. Boyden as a witness at the evidentiary hearing, and we will not speculate about the nature of any evidence which was not presented at the hearing. *See Black*, 794 S.W.2d at 757. As a result, the record does not preponderate against the post-conviction court's determination that the Petitioner failed to establish that counsel provided deficient performance resulting in prejudice. The Petitioner is not entitled to relief on this basis.

## B. Failure to Object to the Admission of the Satchel of Documents Because of an Incomplete Chain of Custody

The Petitioner asserts that counsel failed to object to admission of the documents found inside the satchel because the State did not establish the proper chain of custody to show the documents had not been altered. The State responds that the post-conviction court did not err by denying relief because chain of custody was established.

At the evidentiary hearing, the post-conviction court credited Mr. Savarin's testimony that he went to the Petitioner's home at the Petitioner's direction to retrieve items from inside, that Mr. Savarin found the documents, and that Mr. Savarin provided the documents to the victim. The court found that Mr. Savarin's motivation for providing the documents to the victim was immaterial. The court found that law enforcement and the prosecutors were not involved and that, as a result, no reason existed to challenge the admission of the documents on the basis of an unlawful search and seizure. The court, likewise, found that no basis existed to question the chain of custody.

In the written order denying relief, the post-conviction court credited trial counsel's testimony that Mr. Savarin found the documents inside the Petitioner's home, that Mr. Savarin provided the documents to the victim, that the victim provided the documents to the prosecutor, and that the prosecutor provided the documents to counsel during discovery. The court credited counsel's testimony that the Petitioner and counsel reviewed the documents, that the Petitioner did not object to the authenticity of the documents or allege the documents had been altered, and that counsel concluded that a foundational or chain of custody issue did not exist. The court determined that the Petitioner failed to establish by clear and convincing evidence that counsel provided deficient performance resulting in prejudice.

The record reflects that the documents were obtained by Mr. Savarin, the Petitioner's former husband, when he entered the Petitioner's home at her instruction. While there, he found the documents and provided them to the victim, who provided them to the prosecutor. The trial proof was consistent with this evidence. The documents were provided to counsel during the discovery process. As a result, the Petitioner failed to establish an incomplete chain of custody. Further, counsel and the Petitioner reviewed the discovery materials, and she did not question the authenticity of the documents or allege the documents had been altered. In any event, the Petitioner did not allege any specific issue with the chain of custody, and she failed to establish at the evidentiary hearing that the outcome of the trial would have been different if counsel had objected to the chain of custody. As a result, the record does not preponderate against the post-conviction court's determination that the Petitioner failed to establish that counsel provided deficient performance resulting in prejudice. The Petitioner is not entitled to relief on this basis.

## C.      Failure to Cross-Examine Witnesses Adequately and to Challenge False Testimony

The Petitioner asserts, generally, that trial counsel failed to cross-examine the trial witnesses adequately and to challenge false testimony. However, she does not identify in her appellate brief any specific trial witness that counsel inadequately cross-examined or any alleged false testimony. The State responds that the post-conviction court did not err by denying relief on this basis.

As a preliminary matter, we note that although the Petitioner cites to legal authority in her appellate brief, she failed to cite to the record or to provide any argument regarding her allegation. Tennessee Rule of Appellate Procedure 27(a)(7)(A) requires that an appellant's argument contain "citations to the authorities and appropriate references to the record . . . relied on." The rules of this court provide, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived[.]" Tenn. Ct. Crim. App. R. 10(b). Notwithstanding the deficiency in the Petitioner's brief, we will consider the issue. We caution counsel, however, that appellate

-14-

review is frustrated by the failure to identify the basis in the record for the argument presented and that compliance with the Rules of Appellate Procedure is expected.

At the evidentiary hearing, the post-conviction court merely stated as follows: "Failure to vigorously cross the victim. According to [trial counsel], having done this for 25 years or so, he thought his cross-examination was adequate. Again, strategy, that's the word for the day, folks, defense strategy and the disproportionate sentencing."

In the written order denying relief, the post-conviction court noted that the Petitioner's allegation in the petition for relief related to trial counsel's cross-examination of the victim regarding the Petitioner's below-average salary and of Mr. Savarin's motivation to testify against the Petitioner. The court credited counsel's testimony that he was unaware of any false statements by the trial witnesses and that counsel did not possess any evidence that would have challenged the validity of the witness testimony. The court found that the Petitioner failed to present evidence establishing that any of the trial testimony was false. The court found that although the Petitioner referred to the existence of documents that would, generally, refute witness testimony, she failed to present those documents at the evidentiary hearing. The court noted that witness credibility was determined by the jurors and concluded that counsel did not provide deficient performance.

The record reflects that the Petitioner did not present any evidence to establish her allegation that counsel failed to cross-examine the trial witnesses adequately or to impeach the credibility of the witnesses. The Petitioner testified that "some evidence" should have shown the victim testified untruthfully and that counsel did not present this evidence, but she did not identify the evidence to which she referred. *See Black*, 794 S.W.2d at 757. The Petitioner, likewise, testified that counsel did not "drill down on inaccurate statements made by witnesses," but, again, she did not identify any inaccurate testimony or provide evidence to refute the trial testimony. The Petitioner testified that the victim's bookkeeper and an unidentified woman could have testified at the trial that the victim frequently his bank statements and went to the bank. However, she did not present either of these potential witness at the evidentiary hearing. *See id*. As a result, the record does not preponderate against the post-conviction court's determination that the Petitioner failed to establish that counsel provided deficient performance resulting in prejudice. The Petitioner is not entitled to relief on this basis.

## D.     Insufficient Communication and Preparation

The Petitioner alleges that trial counsel provided ineffective assistance by failing to communicate sufficiently and by failing to prepare her for the trial. She asserts that counsel only met with her sporadically, failed to review discovery materials, and failed to prepare her for the trial. The State responds that the Petitioner has waived appellate review of this issue by failing to raise it in her petition for relief or at the evidentiary hearing. The

Petitioner has not responded to the State's waiver argument by submitting a reply brief. *See* T.R.A.P. 27(c) (reply briefs).

The record reflects that the Petitioner raises this allegation for the first time on appeal and that, as a result, the issue was not addressed by the post-conviction court at the evidentiary hearing or in the written order denying relief.

Our supreme court has determined that "issues not addressed in the post-conviction court will generally not be addressed on appeal" and that the plain error doctrine "may not be applied in post-conviction proceedings to grounds that would otherwise be deemed . . . waived or previously determined." *Walsh v. State*, 166 S.W.3d 641, 645-46 (Tenn. 2005); *Grindstaff v. State*, 297 S.W.3d 208, 219 (Tenn. 2009). This court "may only consider issues that were not formally raised in the post-conviction petition if the issue was argued at the post-conviction hearing and decided by the post-conviction court without objection." *Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020). The Petitioner has waived appellate review and is not entitled to relief on this basis.

## E.  Failure to Appeal the Length of Sentence

The Petitioner's sole statement in her appellate brief regarding this allegation is that trial counsel's "failure to preserve or appeal sentencing issues was deficient and prejudicial under Carpenter and Howard." The State argues that the Petitioner has waived appellate review by failing to prepare an adequate brief on this issue.

Tennessee Rule of Appellate Procedure 27(a)(7)(A) requires that an appellant's argument contain "citations to the authorities and appropriate references to the record . . . relied on." The rules of this court provide, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived[.]" Tenn. Ct. Crim. App. R. 10(b). The Petitioner's single sentence regarding communication and preparation does not contain references to the record, proper citations to legal authority, or provide any meaningful argument and is wholly inadequate. We conclude that the Petitioner has waived appellate review of this issue and is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

**s/ Robert H. Montgomery, Jr.**
ROBERT H. MONTGOMERY, JR., JUDGE

-16-